# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

———————————————————— :
:
JOSEPH KANE, et al., :
                Plaintiffs, :
:
      v. :     CASE NO. 18-cv-2261-YK
:
OLLIE'S BARGAIN OUTLET, :
INC., :
:
           Defendant. :
:
———————————————————— :

## DEFENDANT OLLIE'S BARGAIN OUTLET, INC.'S
## MEMORANDUM IN OPPOSITION TO
## <u>PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION</u>

**FISHER & PHILLIPS, LLP**

Heather Z. Steele, Esquire
PA91391
150 N. Radnor Chester Road, Suite C300
Radnor, PA  19087
(610) 230-2150 (phone)
(610) 230-2151 (facsimile)
hsteele@fisherphillips.com

Kathleen McLeod Caminiti, Esquire
NJ040361987
Admitted Pro Hac Vice
430 Mountain Avenue, Suite 303
Murray Hill, NJ  07974
(908) 516-1050 (phone)
(908) 516-1051 (facsimile)
kcaminiti@fisherphillips.com

FP 36468464.1

# **TABLE OF CONTENTS**

**Page(s)**

Index of Exhibits ..................................................................................... iii

Table of Authorities ................................................................................vi

I.   Introduction ........................................................................................1

II.   Counterstatement of Facts ................................................................4

    A.   Ollie's Stores and Management Structure..............................4

    B.   The Development of the CTL Position ...................................5

    C.   CTLS Primarily Perform Exempt Duties ...............................6

    D.   The Individual Work Experiences of Plaintiffs & CTLs Vary Considerably..........................................................................12

        1.   Plaintiffs' Experiences Varied Significantly ............12

        2.   CTLs Managerial Duties Vary Widely.....................13

III.   Legal Standard ................................................................................15

IV.   Argument

    A.   Plaintiffs Cannot Establish That They Are Similarly Situated to the Class They Seek to Represent .............................................18

        1.   Plaintiffs Fail to Define a Collective of Similarly Situated Individuals Because Their Alleged Job Duties Differ from Other CTLs' Whose Primary Duties Were Managerial ..........27

        2.   Plaintiffs Point to No Common Evidence that All CTLs Have Materially the Same, Primarily Non-Managerial Duties..........31

    B.   Plaintiffs Fail to Show There Is A Manageable Class ........36

C.     The Proposed Class Notice Should Be Rejected ................................37

Conclusion ...............................................................................................................40

FP 36468464.1

## __INDEX OF EXHIBITS__

Exhibit A is a true and correct copy of a form letter which Plaintiff's counsel distributed to some Ollie's CTLs.

Exhibit B is a true and correct copy of a December 6, 2017 email from Charles Gershbaum to Plaintiff Kane, produced by Kane in this litigation and bates labeled Kane 3-4.

Exhibit C is a true and correct copy of a December 7, 2017 email from Charles Gershbaum to Plaintiff Amuso, produced by Amuso in this litigation and bates labeled Amuso 184.

Exhibit D is a true and correct copy of a complete set of 56 Declarations of Ollie's employees, detailing the work they performed in the  Co-Team Leader (CTL) position, bates labeled OLLIES 2956-3188 CONFIDENTIAL.

Exhibit D-1 is a summary of key information from the aforementioned Declarations, which was prepared by Ollie's counsel for the Court's convenience pursuant to Fed. Evid. R. 1006.

Exhibit D-2 is a summary of additional differences in the job duties identified in Ollie's Declaration, that was prepared by Ollie's counsel for the Court's convenience pursuant to Fed. Evid. R. 1006.

Exhibit E is a true and correct copy of excerpts taken from the deposition testimony of Defendant's 30(b)(6) designee Scott Osbourne (July 17, 2019).

Exhibit F is a true and correct copy of excerpts taken from the deposition testimony of Named Plaintiff Joseph Kane (June 21, 2019).

Exhibit G is a true and correct copy of Ollie's Staffing Project Fact Sheet, effective October 21, 2012 and the Ollies Leadership Institute ("OLI") Leadership Ladder, produced at OLLIES 4473-74; 4477.

Exhibit H is a true and correct copy of Ollie's  Before & After, Supervisor Changes & Job Duty Summary document dated 10-21-12, produced at OLLIES 4467-69.

Exhibit I is a true and correct copy of documents prepared by Plaintiff Rich when he hired employees, which was marked as Rich Deposition Exhibits 2-6, and bates numbered  OLLIES 5538-39; 5545-46; 5579-81; 5547-52; 5559-66; 5567-72.

Exhibit J is a true and correct copy of Ollie's 45 day update since June 25, 2012 announcement of staffing changes, produced at OLLIES 4459-60.

Exhibit K is a true and correct copy of Ollie's notes of an October 15, 2012 phone call to Store Team Leaders, produced at OLLIES 4464-66.

Exhibit L is a true and correct copy of excerpts taken from the deposition testimony of Opt-In Plaintiff Dorothy Benson (September 26, 2019).

Exhibit M is a true and correct copy of termination documents for Plaintiffs Dorothy Benson (Benson Deposition Exhibit 10, produced at  Benson 14); Travis Brake (Brake Deposition Exhibit 8, produced at OLLIES 4642); Joseph Kane (Kane Deposition Exhibit 35, produced at OLLIES 532, William Palmer Rich (produced at OLLIES 4876); and Brittany White (produced at OLLIES 4820).

Exhibit N is a true and correct copy of excerpts taken from the deposition testimony of Opt-In Plaintiff Travis Brake (September 18, 2019).

Exhibit O is a true and correct copy of, the Store Operations Team Leader Performance Review of Plaintiff Benson, dated April 18, 2018, which was marked as Benson Deposition Exhibit 7, produced at OLLIES 4500-4503.

Exhibit P is a true and correct copy of Ollie's Job Duty Summary for Store Team Leader (STL), Co-Team Leader (CTL) and Assistant Team Leader (ATL), effective October 21, 2012, produced at OLLIES 4471-72.

Exhibit Q is a true and correct copy of Ollie's "Leadership Duties by Position", produced at OLLIES 4482.

Exhibit R is a true and correct copy of the Co-Team Leader Job Description, produced at OLLIES 663-64, and marked as Osborne Deposition Exhibit 1.

Exhibit S is a true and correct copy of excerpts taken from the deposition testimony of Named Plaintiff Candi Marie Amuso (May 29, 2019).

Exhibit T is a true and correct copy of Named Plaintiff Candi Marie Amuso's Resume, produced by Amuso at 182-183.

Exhibit U is a true and correct copy of Named Plaintiff Joseph Kane's resume, produced by Kane at Kane 1-2.

FP 36468464.1

Exhibit V is a true and correct copy of Opt-In Plaintiff Dorothy Benson's resume, which was marked as Benson Deposition Exhibit 7, and produced by Benson at Benson 1-4.

Exhibit W is a true and correct copy of Opt-In Plaintiff William Palmer Rich's resume, which was marked as Rich Deposition Exhibit 1 and produced by Rich at Rich 1-2.

Exhibit X is a true and correct copy of Opt-In Plaintiff Travis Brake's resume, produced by Brake at Brake 1-2.

Exhibit Y is a true and correct copy of Opt-In Plaintiff Brittany White's resume, produced by White at White 4-5.

Exhibit Z is a summary of key facts showing differences in the Plaintiffs' testimony relating to their job duties, that was prepared by Ollie's counsel for the Court's convenience pursuant to Fed. Evid. R. 1006.

Exhibit AA is a true and correct copy of documents prepared by Plaintiff Benson when she hired employees, which was marked as Benson Deposition Exhibit 13, and bates numbered OLLIES 5006-5499.

Exhibit BB is a true and correct copy of excerpts taken from the deposition testimony of Opt-In Plaintiff William Palmer Rich (October 17, 2019).

FP 36468464.1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aboud v. City of Wildwood*,
No. 12-7195, 2013 WL 2156248 (D.N.J. May 17, 2013) ...........................38, 39

*Banks v. RadioShack Corp.*,
No. 13-685, 2014 WL 1724856 (E.D. Pa. Apr. 25, 2014) ....................16, 18, 24

*Bramble v. Wal-Mart Stores, Inc.*,
No. 09-4932, 2011 WL 1389510 (E.D. Pa. April 12, 2011) ......17, 18, 23, 34, 36

*Brown v. Barnes & Noble, Inc.*,
252 F.Supp.3d 255 (S.D.N.Y. 2017) ..................................................................35

*Chemi v. Champion Mortg.*,
No. 05-1238, 2006 WL 7353427 (D.N.J. June 21, 2006) ..................................16

*Cobus v. Duhadway, Kendall & Assocs.*,
No. 13-14940, 2014 WL 4181991 (E.D. Mich. Aug. 21, 2014) .......................31

*Delnoce v. Globaltranz Enterprises, Inc.*,
No. 17-1278, 2017 WL 4769529 (D. Ariz. Sept. 25, 2017)...............................35

*Diaz v. Elecs. Boutique of Am., Inc.*,
No. 04-0840, 2005 WL 2654270 (W.D.N.Y. Oct. 17, 2005)............................20

*DiBlasi v. Liberty Mutual Group Inc.*,
No. 12-10967, 2014 WL 1331056 (D. Mass. April 3, 2014) .............................22

*Eggnatz v. Coventbridge Inc.*,
No. 18-61250, 2019 WL 1171455 (S.D. Fla. March 13, 2019) .........................35

*Freeman v. Sam's East Inc.*,
No. 17-1786, 2018 WL 5839857 (D.N.J. Nov. 8, 2018).......................20, 23, 34

*Frey v. Spokane Cty. Fire Dist.No. 8*,
No. 05-278, 2006 WL 2597956 (E.D. Wash. Sept. 11, 2006) ..........................30

*Guillen v. Marshalls of MA, Inc.*,
841 F.Supp.2d 797 (S.D.N.Y. 2012) .................................................................24

FP 36468464.1

*Hall v. Guardsmark LLC*,
    No. 11-213, 2012 WL 3580086 (W.D. Pa. Aug. 17, 2012) ..................16, 23, 36

*Harriel v. Wal-Mart Stores Inc.*,
    No. 11-2510, 2012 WL 2878078 (D.N.J. July 13, 2012) ..............................29, 34

*Hoffmann-LaRoche Inc. v. Sperling*,
    493 U.S. 165 (1989)..................................................................................36, 39

*Holt v. City of Battle Creek*,
    925 F.3d 905 (6th Cir. 2019) ...........................................................................30

*Holt v. Rite Aid Corp.*,
    333 F.Supp.2d 1265 (M.D. Ala. 2004)..............................................................21

*Hughes v. Township of Franklin*,
    No. 13-3761, 2014 WL 1428609 (D.N.J. April 14, 2014) .................................38

*Kuznyetsov v. W. Penn Allegheny Health Sys., Inc.*,
    No. 09-379, 2009 WL 1515175 (W.D. Pa. June 1, 2009) ...........................37, 38

*Lovo v. Am. Sugar Refining, Inc.*,
    No. 17-418, 2018 WL 3956688 (D. Md. Aug. 17, 2018), *Appeal
    Dismissed by*, 2018 WL 7500305 (4th Cir. Sep. 21, 2018)................................21

*McDowell v. Cherry Hill Twp.*,
    No. 04-1350, 2005 WL 3132192 (D.N.J. Nov. 21, 2005)...................................30

*Moore v. PNC Bank, N.A.*,
    No. 12-1135, 2013 WL 2338251 (W.D. Pa. May 29, 2013) .......................16, 19

*O'Neal v. Emery Fed. Credit Union*,
    No. 13-22, 2013 WL 4013167 (S.D. Ohio Aug. 6, 2013) ..................................33

*Postiglione v. Crossmark, Inc.*,
    No. 11-960, 2012 WL 5829793 (E.D. Pa. Nov. 15, 2012)................................35

*Reed v. Empire Auto Parts, Inc.*,
    No. 13-5220, 2015 WL 761894 (D.N.J. Feb. 23, 2015)..............................16, 34

*Rutledge v. Claypool Elec., Inc.*,
    No. 12-159, 2013 WL 435058 (S.D. Ohio Feb. 5, 2013)...................................36

*Sawyer v. Health Care Solutions at Home, Inc.*,
   No. 16-5674, 2018 WL 1959632 (E.D. Pa. April 25, 2018) .............................38

*Schwartz v. Victory Sec. Agency, L.P.*,
   No. 11-489, 2012 WL 4506566 (W.D. Pa. Sept. 28, 2012) ..............................16

*Sloane v. Gulf Interstate Field Servs., Inc.*,
   No. 16-1571, 2017 WL 1105236 (M.D. Pa. Mar. 24, 2017)
   ...................................................................... 1, 16, 17, 18, 19, 35, 38

*Swank v. Wal-Mart Stores, Inc.*,
   No. 13-1185, 2018 WL 2684102 (W.D. Pa. June 5, 2018) ...............................16

*Swartz v. Windstream Commc'ns, Inc.*,
   No. 09-946, 2010 WL 2723213 (W.D. Pa. July 8, 2010)...................................20

*Symczyk v. Genesis Healthcare Corp.*,
   656 F.3d 189 (3d Cir. 2011), *rev'd on other grounds,* 656 F.3d
   189 (3rd Cir. Aug. 31, 2011) ......................................................................15, 17

*Vargas v. Gen. Nutrition Ctrs., Inc.*,
   No. 10-867, 2012 WL 5336166 (W.D. Pa. Oct. 26, 2012)....................36, 38, 39

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011)........................................................................................15

*White v. Winn-Dixie Montgomery, LLC*,
   No. 14-1702, 2017 WL 529298 (N.D. Ala. Feb. 9, 2017), *Aff'd,*
   741 Fed.Appx. 649 (11th Cir. July 09, 2018)...................................................22

*Wooton v. Steelmaster Indus., Inc.*,
   No. 19-cv-419-Orl-37GJK, 2019 WL 2423786 (M.D. Fla. June 10,
   2019) ..............................................................................................................35

## Statutes

29 U.S.C. § 216(b) ................................................................................................15

Fair Labor Standards Act "FLSA".............................. 1, 3, 15, 16, 17, 23, 35, 39, 40

## Other Authorities

Rule 30(b)(6).........................................................................................................17

29 C.F.R. §§ 541.100, 541.102 .................................................................29

FP 36468464.1

## I.    INTRODUCTION

Plaintiffs Joseph Kane ("Kane") and Candi Amuso ("Amuso") ("Plaintiffs[1]"), both former Co-Team Leaders ("CTLs") for Ollie's, initiated this lawsuit alleging that Ollie's misclassified CTLs as exempt from the overtime requirements of the Fair Labor Standards Act ("FLSA") and that CTLs were denied overtime pay for hours worked in excess of 40 per week.  Since filing their Complaint over 18 months ago, Plaintiffs have lost one named Plaintiff and four other CTLs have filed consents to join the lawsuit.[2]  Plaintiffs now seek to certify a nationwide class of "all current and/or former [CTLs] employed by [Ollie's], nationwide at any time from March

---

[1] The term Plaintiffs sometimes refers to the named Plaintiffs and the four opt-in Plaintiffs, together.

[2] Notwithstanding Plaintiffs' counsel attempt to improperly stir up litigation by soliciting class members, only four people have opted into this lawsuit.  Specifically, on December 6-7, 2017, Plaintiffs' counsel sent an email or letter to CTLs stating Ollie's may owe them money for unpaid overtime and asking the CTLs to contact Plaintiffs' counsel's office.  *See* Declaration of Kathleen McLeod Caminiti dated November 4, 2019 ("Caminiti Decl. ") Exs. B-C (all Exhibits referenced herein are attached to and referenced in the Caminit Decl.)  On May 24, 2019, Plaintiffs' counsel also sent letters regarding the litigation to potential class members.  Ex. A.  Additionally, Plaintiff Amuso solicited CTLs to join the lawsuit as Plaintiffs as revealed by Opt-in Plaintiff Rich during his deposition.  Ex. BB 9:7-10:9; 11:23-12:23.  The Court, understandably, frowns upon such practices. *See, e.g., Sloane v. Gulf Interstate Field Servs., Inc.*, No. 16-1571, 2017 WL 1105236, at *6-10 (M.D. Pa. Mar. 24, 2017).  Given this concerted effort to provide *extra judicial* notice, there is no need to conditionally certify this case.

12, 2015 through present," based on testimony and affidavits from **less than 1%** of CTLs, who Plaintiffs admit worked in **2%** of Ollie's Stores (ECF 48-1, pp.3-4).[3]

To put it another way, relying on a paltry showing from <u>six</u> CTLs – five of whom were terminated[4] – Plaintiffs seek to conditionally certify a *nationwide* collective of more than <u>1,000</u> CTLs who worked in <u>345</u> stores in <u>25</u> states.   The essence of Plaintiffs' lawsuit is their allegation that Ollie's misclassified them as exempt because they spent the majority of their time performing non-managerial duties.[5]  Plaintiffs' allegations, however, conflict with the duties set forth in the CTL job description, with the discovery obtained from the Opt-ins (*see infra* III(C-D)), and with Declarations from 56 Ollie's employees.[6] The Ollie's Declarations show that the primary duty of CTLs is managing the store and exercising discretion and independent judgment with respect to matters of significance:

- CTLs hire, discipline, and fire employees;

---

[3] Plaintiff's motion is premised on testimony and affidavits from six CTLs who worked in eight Ollie's stores in four states.  During the class period Ollies employed 1,042 CTLs in 345 stores across 25 states.  *See* Caminiti Decl.  ¶2 https://www.ollies.us/what-is-ollies/; https://www.ollies.us/locations/.

[4] See Ex. M, termination documents for Plaintiffs Kane,  Benson, Brake, Rich and White.

[5] The Opt-In Plaintiffs each submitted cookie-cutter Declarations asserting that they "spent about 90% or more of [their] total work time doing manual labor type tasks" and that they "had no authority to manage the store."  ECF 48-8 ¶ 2; 4; ECF 48-10 ¶ 2; 4; ECF 48-11 ¶¶ 2-; 4; ECF 48-9 ¶¶ 2-; 4.

[6] A complete set of Ollie's Declarations is attached as Ex. D.  For the Court's convenience, pursuant to Evid. R. Fed. 1006, a summary of key facts from those Declarations is included as D-1.

2

- CTLs assign work to, and direct the work of, employees;
- CTLs formulate and implement merchandising strategies;
- CTLs implement management policies and operating practices with respect to employees and customers;
- CTLs carry out major assignments, including the conduct of and responsibility for store operations;
- CTLs investigate and resolve on management's behalf such matters of significance as cash shortages, employee misconduct, and policy violations; and
- CTLs represent Ollie's in handling complaints, including customer and employee complaints
- CTLs are in charge of the stores in the absence of the STL and are "second in command."

*See Ex. D.*  Moreover, Plaintiffs have not presented any evidence of a common policy or plan of Ollie's that **requires** all CTLs – and not just Plaintiffs – to perform non-exempt tasks during the majority of their workdays.

On the other hand, five of the six Plaintiffs were terminated for poor performance, misconduct or job abandonment, which shows, if anything, that they were not doing their CTL jobs.  They cannot pretend to be similarly situated to a class of all CTLs, who no doubt – and as Ollie's submissions show – were performing their *management* duties on a full-time basis.  *Id.*  Plaintiffs urge the Court to certify a collective action without any evidence it could actually be tried on a collective basis.  As set forth below, there is no indication Plaintiffs are similarly situated to the proposed class.  Their Motion should therefore be denied.

FP 36468464.1

## II.   COUNTERSTATEMENT OF FACTS

### A.   Ollie's Stores and Management Structure

Ollie's is one of America's largest retailers of closeout merchandise and excess inventory, having 345 stores in 25 states.[7]  Ollie's has "very different stores in very different geographic areas . . . each store is very different in decisions on merchandise, on customers, and retail every day."[8]  Unlike most chain retailers, Ollie's does not use a planogram[9] to show where merchandise should be stocked and displayed.  This is because the footprint of each Ollie's store is different and Ollie's receives merchandise from buy-outs such that each store receives different types and amounts of products.[10]  Until days prior to delivery, Ollie's employees do not know what merchandise will be delivered.

At each Ollie's store, the highest-ranking management employee is the Store Team Leader ("STL").[11]  The CTL is the "second in command" in each store and the acting STL when the STL is absent.[12]  The CTL has supervisory authority over all other employees within the store, including each: (1) Assistant Team Leader

---

[7]  *See*  Ex.  E  17:9-11;  19:14-19;  20:4-5;  https://www.ollies.us/what-is-ollies/; https://www.ollies.us/locations/.

[8] *Id.* 143:17-144:6; 149:19-150:1.

[9] Planograms are diagrams or models that indicate the placement of retail products on shelves in order to maximize sales.

[10] Ex. F 34:13-35:6.

[11] Ex. E 20:8-10.

[12] *Id.* 147:7-148:1.  *See also* Ex. G.

4

("ATL"); (2) Customer Service Supervisor; (3) Customer Service Associate; (4) Sales Supervisor; and (5) Sales Associate.[13]   The number of employees in each position varies from store-to-store based on sales volume; the highest volume stores also have a Freight Flow Supervisor.[14]

### B.   The Development of the CTL Position

The CTL position was redesigned in a 2012 reorganization when Ollie's created a Task Force to revise its staffing model to provide a better-defined career path for advancement through the Ollie's Leadership Institute ("OLI").[15]   Ollie's intended that CTLs would be groomed for promotion to STL; the CTL position was to be managerial in both responsibilities and authority.[16]   The CTL was to be the "no. 2" or "2nd in command" in the store, would "have more management duties," and would be salaried.[17]   Ollie's clearly defined the managerial responsibilities for CTLs as including: (1) interviewing new hires; (2) interviewing for promotions; (3) conducting performance reviews; (4) ensuring visual merchandising standards are met; (5) scheduling associates; (6) managing the Door to Floor in 24 process; and (7) executing strategies to improve sales performance in each department.[18]

---

[13] Ex. H; Ex. E 32:17-22.
[14] Ex E 24:6-14.
[15] OLI trains and promotes internal candidates.  *See* Exs J; K.
[16] Ex. E 27:14-28:1.
[17] Ex. G.
[18] Exs. P; Q.

## C.  CTLs Primarily Perform Exempt Duties

The CTL job description, the Declarations Ollie's has produced, and discovery obtained from Plaintiffs all demonstrate that CTLs perform exempt duties and that their primary duty is to manage the store and its employees.

The CTL job description directs CTLs to provide leadership for the entire store operation in partnership with the STL.  According to the job description, CTLs are expected to spend their time:

- Assisting with the management of payroll budgets, expenses, store banking, shrink reduction, and the timely completion of related reports to ensure financial and operational goals are met;

- Implementing successful strategies for merchandising;

- Ensuring that Store standards, Redbook compliance, seasonal transition planning, inventory processing, and company programs meet all operational expectations;

- Managing the Door to Floor process to ensure that merchandise is planned for and received properly and that the sales floor is properly stocked with the merchandise within 24 hours of its receipt;

- Ensuring all Associates are assigned daily tasks and are productive;

- Ensuring all merchandising standards and sales goals are met by walking the Sales Floor with the Sales Supervisors on a regular basis;

- Ensuring all customer service standards meet expectations;

- Developing and executing plans for coaching, training, developing, evaluating, supervising, and scheduling store Associates;

- Hiring, recruiting, interviewing, selecting, and onboarding candidates to ensure the staffing needs of the store are continually met;

- Ensuring proper scheduling and staffing for the business's needs, to include time keeper integrity;

- Maintaining proper records according to company guidelines;

6

- • Communicating company directives and programs to Associates and ensuring that follow-up items are completed accurately and timely; and

- • Performing all Team Leader functions to open and close the store when needed.  Ex. R.

The 56 Declarations from employees all across Ollies' stores establish that CTLs perform their jobs in accordance with the CTL job description and have direct management responsibilities, including:

- • **Interviewing & Hiring**: *See* Ex. D *e.g.*, Ollie's 2956-57 ¶4 ("I have responsibility for interviewing and hiring associates and supervisors"); Ollie's 3022-25 ¶3 ("I am responsible for all aspects of the hiring process. . . .  I review applications, decide which applicants to interview, set up interviews, conduct interviews and decide who to hire"); Ollie's 3066-69 ¶6 ("I do 90% of the hiring in the store").

- • **On-Boarding & Training**: *Id., e.g.*, Ollie's 2978-82 ¶5 ("I had primary responsibility for onboarding new hires"); Ollie's 2970-72 ¶7 ("As a Co-Team Leader, I was the HR Captain and expected to spend the majority of my time continuously training associates throughout their employment"); Ollie's 3043-35 ¶7 ("As a CTL, I train new employees and on-board them to make sure they understand the expectations of the store and working their shifts").

- • **Scheduling:** *Id, e.g.*, Ollie's 2983-87 ¶ 18 ("As CTL I made the schedule of the hourly employees at the store. . . .  I had to exercise discretion and

judgment to determine how to schedule people based upon employees' leave requests and accounting for the store's labor budget"); Ollie's 3026-29 ¶7 ("I am responsible for scheduling employees"); Ollie's 3038-42 ¶8 ("I schedule more associates to work on days when the Store is expected to be busy").

- **Employee Review & Feedback:** *Id., e.g.*, Ollie's 2967-69 ¶¶6-7 ("I supervise 20 hourly employees and conduct annual written performance reviews for each associate.  I also recommend employees for OLI . . . [and] determine if they are ready to be promoted."); Ollie's 3015-17 ¶9 ("I conduct one-on-one counseling sessions with employees when they need improvement"); Ollie's 3034-37 ¶7 ("I regularly conduct employee training, including formal training and informal coaching and counseling").

- **Discipline & Corrective Action:**  *Id., e.g.*, Ollie's 2973-2977 ¶12 ("I have the authority to decide whether to write up, discipline or terminate an employee"); Ollie's 3010-14 ¶6 ("I am responsible for employee counseling and discipline"); Ollie's 3030-33 ¶ 14 ("I am the primary person responsible for associate discipline").

- **Merchandising:**  *Id.,  e.g.*,  Ollie's  2991-97  ¶11  ("the  CTL  has  full responsibility and discretion to determine how to merchandise and arrange products in the store"); Ollie's 3022-25 ¶9 ("I decide how to display and organize [] merchandise . . . I also make decisions about the most efficient

8

way to get the merchandise to the floor and hand out assignments to associates"); Ollie's 3051-55 ¶14 ("I make just about every decision regarding merchandising, including where to place produce on the sales floor").

The Plaintiffs themselves admit they performed management duties as Ollie's CTLs, for example in their post-Ollie's resumes[19] and deposition testimony:

Plaintiff Amuso's resume describes her Ollie's CTL responsibilities as:

Interviewing for new employees, hiring, training, supervising and disciplining of employees in a team of 17 or more.  Designed displays to make the store experience interactive and engaging…. Excelling in marketing skills…. Manage entire freight flow process.  Accomplished Door to Floor in 24 hr. time frame and formulated a plan of improvement if Door to Floor was not accomplished.  Responsible for Freight Team and merchandising of sales floor.[20]

Plaintiff Kane's resume states that his CTL job responsibilities included:

managing daily operations of the store; making decisions on merchandising and item placement; supervising the process of warehouse deliveries from receiving to sales floor, reviewing department standards and expectations weekly with department supervisors, and assigning employees to specific duties to best meet store needs.[21]

---

[19] Plaintiffs' resumes are entitled to significant weight as admissions that are in many instances confirmed by contemporaneous documents which reflect Plaintiffs' activities as CTLs.  On the other hand, Plaintiffs' deposition testimony, which sometimes contradicts their resumes, is obviously nothing more than self-serving statements by well-coached witnesses rewriting their biographies for the litigation.
[20] Ex. T; Ex. S 182-183.
[21] Ex. F 197:17-198:19; Ex. U.

9

Kane also admitted that he interviewed applicants at a job fair for the Hamilton store and made hiring recommendations.[22]

Opt-in Plaintiff Benson produced two resumes, both of which she admits are accurate.  They state that as an Ollie's CTL she: (1) managed store operations; (2) was responsible for merchandising; (3) supervised a team of 30 sales associates; (4) was instrumental in getting the store back to company standards; (5) was responsible for running the store in the absence of a store manager throughout the holiday season; (6) was responsible for training and promoting three employees to supervisor positions; (7) was responsible for all recruitment and human resources; (8) observed and coached associates in customer service and sales techniques; and (9) planned and delegated assignments based on workload and employee schedules.[23]  During deposition Benson admitted that, as a CTL, she interviewed and was primarily responsible for completing hiring documentation of approximately 50 employees, had responsibility for employee reviews, disciplined employees (including issuing corrective actions and performance counseling to 16 employees), and generally prepared the schedule for her store.[24]

Opt-in Plaintiff Rich's resume states that as an Ollie's CTL, "he led the startup and grand opening of a new Ollie's store, managed a $4M, 35 employee, big-box

---

[22] Ex. F 59:5-60:5; 65:67-17; 71:4-8; 71:21-72:11; 72:18-73:9; 92:14-93:19.
[23] Ex. V; Ex. L 45:15-22; 46:14-23; 48:1-11; 48:18-22.
[24] Ex. L 117:2-14; 119:13-16; 120:14-19; 176:12-177:19; 247:4-250:5; 305:5-7.

location, directed all departments, enforced sound merchandising and loss control strategies, and executed corporate programs, promotions and policies."[25]   During deposition Rich authenticated the interview guides and new hire paperwork he completed and signed as hiring manager responsible for interviewing employees for Ollie's new store in Dunn, North Carolina.[26]

Opt-in Plaintiff Brake's resume states that as an Ollie's CTL he conducted interviews, hired, trained and developed new hires, ran a freight team of 4-10 employees, was ahead of all merchandising throughout the store, oversaw pricing and signage throughout the store, made preparations for upcoming ads and sales, and completed a range of weekly reports to send to the DTL.  *See* Ex. X; Ex. N 50:20-24; 52:12-14.[27]

Opt-in Plaintiff White's resume describes her duties as a CTL as follows:

Customer Service, Open/Closing of the store, making deposits, Loading and unloading freight, Scheduling, Profit/Loss Reports, Daily/Weekly/Monthly paperwork, merchandising, returns/cash outs, any manager duties in the absence of the STL.[28]

---

[25] Ex. W.

[26] Ex. BB 85:24-89:10; 129:16-143:17; Ex. I

[27] Brake tried to discount the admissions, which are inconvenient for his litigating position, by testifying he included false, over-stated information or "puffery" on his resume.  At best, Brake is an admitted liar who was terminated by Ollie's after only four months of employment. Ex. N 58:9-11. Brake's declaration and testimony should not be credited.

[28] Ex. Y.  White's deposition was scheduled but canceled by Plaintiffs who advised that Ms. White was hospitalized.

The documents produced by Plaintiffs leave no doubt that CTLs' primary duties are managerial.

### D.   The Individual Work Experiences of Plaintiffs & CTLs Vary Considerably

CTLs' management duties vary among stores depending on store size, region, each store's challenges, and STL expectations.[29]  As Scott Osborne, Ollie's Regional VP of Stores, explained: "A CTL that [is] managing 4 people on the decisions that they make and how they define workload and make independent decisions is going to be very different than a CTL that has a collective of 10, 11, 12 full-time equivalents."[30]

### 1.  Plaintiffs' Experiences Varied Significantly

Plaintiffs' testimony demonstrates their work experiences varied significantly and often deviated from the duties listed in the CTL job description.[31]  A simple comparison of the testimony of Opt-Ins Benson and Brake, for example, shows how each Plaintiff's experience was unique:

---

[29] Ex. E 150:5-22.

[30] *Id.* 143:17-145:8 ("[W]e have stores that do 2,500 transactions a week.  We have stores that do over 4,000 transactions a week.... We have stores that handle 700 cases a truck and stores that handle 2,100 cases a truck.  And ... the CTL would make a decision in a rural environment to put a certain product up forward for that customer versus you put a CTL in a different market, a metro market, putting that same selection is different.")

[31] For a listing of numerous differences in the job duties performed by the Plaintiffs and Opt-In Plaintiffs, *see* Ex. AA hereto.

12

- *Benson* made recommendations regarding hiring and was involved in hiring and onboarding over 50 employees. Ex. L 305:5-7; 443:14-19; Ex. S).

  *Brake* stated he never made a decision to hire anyone at Ollie's and was never asked his opinion about hiring.  Ex. N 56:15-58-3.

- *Benson* interviewed and evaluated candidates.  Ex. L 262:16-263:7; 278:3-279:10; 281:3-282:3.

  *Brake* testified he didn't interview anyone at Ollie's and was never asked his opinion about candidate interviews.  Ex. N 56:13-57:14.

- *Benson* completed new hire checklists for employees she hired and had primary responsibility for completing hiring documentation   Ex. L 72:16-73:7; 74:9-75:6; 284:19-286:4.

  *Brake* stated he spent 90% of his day stocking and that his STL handled operational matters. Ex. N 53:3-54:1; 57:21-58:3.

- *Benson* had responsibility for employee reviews and discipline, including corrective actions and performance counseling to 16 employees.  Ex. L 119:13-16; 120:14-19; 177:10-177:19; 247:4-250:5.

  *Brake* testified he never disciplined anyone at Ollie's.  Ex. N 98:2-3.

- *Benson* usually did her store's scheduling.  Ex. L 117:2-14.

  *Brake* testified he never prepared a schedule for his store.  Ex. N 69:14-17. [32]

### 2.  CTLs Managerial Duties Vary Widely

The Ollie's Declarations likewise demonstrate profound differences in managerial duties among Plaintiffs and other CLTs.  For example:

- While Plaintiff Brake testified that he never made a decision to hire, that he did not personally interview anyone and that no one asked his opinion relating to interviews or hiring,[33] fifty-four Declarants testified that that were involved

---

[32] Moreover, Kane's experience differed from the other Plaintiffs' because Hamilton was a new store that Kane assisted in opening.  Ex. F 16:10-17; 43:8-44:3.
[33] Ex. N at 56:13-58-3.

13

to varying degrees in interviewing and hiring.[34]  *See* Ex. D, at *e.g.* Ollies

3034-37 ¶6 (Horn has "pretty much complete autonomy to make hiring

decisions"); Ollies 3051-55 ¶5 (Langenberger interviews and decides whether

to hire non-management employees and makes recommendations to DTL

regarding management-level hires); Ollies 3085-89 ¶4 (Mays makes joint

hiring decisions with the STL).

- While Plaintiff Amuso testified that the STL reviewed, disciplined and

  terminated employees, and she would only punch information into forms or

  coach as directed by the STL,[35] fifty-one Declarants testified that they were

  involved to varying degrees in employee review, discipline and termination

  decisions.[36]  *See* Ex. D, at *e.g.,* Ollie's 2973-77 ¶ 12 (Bishop has authority to

  write up, discipline and terminate); Ollie's 2956-60 ¶11 (Ahlborn collaborates

  with the STL on written counseling); Ollie's 3070-75 ¶19 (Lowe issued about

  30 write-ups and worked with HR on about 10 terminations).

- Plaintiffs and the Ollie's Declarants testified to having different experiences

  relating to responsibility for scheduling.  Plaintiff Brake – no responsibility;[37]

  Plaintiff Amuso - completed draft for STL review and revision;[38] Plaintiff

---

[34] Ex. D-1.

[35] Ex. S 106:8-107:19; 109:21-25; 174:18-20; 204:15-25.

[36] Ex. D-1.

[37] Ex. N at 69:14-17.

[38] Ex. S 90:5-17.

Benson - responsible for scheduling the majority of the time.[39] *See also* Ex. D at *e.g.,* Ollies 2967-69 ¶11 (Berdis creates the schedule for all associates); Ollies 2973-77 ¶13 (Bishop shares scheduling responsibility with the STL);

For the Court's convenience, Ollie's prepared a listing of additional differences in the job duties identified in Ollie's Declarations. S*ee* Ex. D-2.

## III.   LEGAL STANDARD

Generally, "litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011). The FLSA provides a limited exception to that rule, whereby the court *may* allow named plaintiffs to sue both for themselves and other individuals if, and only if, they first prove the other individuals are "similarly situated" to them. 29 U.S.C. § 216(b).

Courts in the Third Circuit employ a two-stage analysis to determine whether an FLSA suit may move forward as a collective action. "During the initial phase, the court makes a preliminary determination whether the employees enumerated in the complaint can be provisionally categorized as similarly situated to the named plaintiff[s]." *Symczyk v. Genesis Healthcare Corp.*, 656 F.3d 189, 192 (3d Cir. 2011), *rev'd on other grounds,* 656 F.3d 189 (3rd Cir. Aug. 31, 2011).

Plaintiffs often suggest that this first-stage "conditional" certification is virtually automatic. Predictably, Plaintiffs here make that very same argument.

---

[39] Ex. L at 117:2-14.

FP 36468464.1

(ECF 48-1, pp. 11-15). While Plaintiff's burden of proof under the "modest factual showing" standard at this stage is lenient, it is "not weightless," and certification is far from automatic. *Moore v. PNC Bank, N.A.*, No. 12-1135, 2013 WL 2338251, at *5 (W.D. Pa. May 29, 2013); *Schwartz v. Victory Sec. Agency, L.P.*, No. 11-489, 2012 WL 4506566, at *5 (W.D. Pa. Sept. 28, 2012).

The question "is the extent to which the claims of the putative class can be proven through common evidence, versus individualized testimony." *Banks v. RadioShack Corp.,* No. 13-685, 2014 WL 1724856, at *2 (E.D. Pa. Apr. 25, 2014); *Reed v. Empire Auto Parts, Inc.*, No. 13-5220, 2015 WL 761894, at *4 (D.N.J. Feb. 23, 2015). Simply identifying a common policy or practice is insufficient; plaintiffs must show the policy or practice violates the FLSA. *Hall v. Guardsmark, LLC*, No. 11-213, 2012 WL 3580086, at *6, 11 (W.D. Pa. Aug. 17, 2012). Moreover, conclusory allegations in pleadings are insufficient to obtain conditional certification. *See, e.g., Chemi v. Champion Mortg.*, No. 05-1238, 2006 WL 7353427, at *5 (D.N.J. June 21, 2006) ("any determination of whether an employee is properly exempted under the FLSA involves a fact-intensive inquiry into each putative class member's employment circumstances"; "the Court may not blithely assume" the similarly situated standard is satisfied based on conclusory allegations).

Where, as here, substantial discovery has been completed, courts in the Third Circuit apply an "intermediate" standard to determine whether conditional

certification is appropriate.  *E.g., Sloane*, 2017 WL 1105236, at *6-10; *Swank v. Wal-Mart Stores, Inc.*, No. 13-1185, 2018 WL 2684102, at *9-10 (W.D. Pa. June 5, 2018); *Bramble v. Wal-Mart Stores, Inc.*, No. 09-4932, 2011 WL 1389510, at *4 (E.D. Pa. April 12, 2011).  Under this standard, plaintiffs must make "some factual showing that the similarly-situated requirement is satisfied," "as a result of the discovery as measured against the original allegations and defenses." *Sloane*, 2017 WL 1105236, at *6-10 (citations omitted).  As *Sloane* stated (*id.* at *7):

> applying the intermediate approach helps the Court [to] make an educated decision as to whether certifying this matter as a collective action would survive the decertification process. To proceed otherwise would be an exercise in futility and wasted resources for all parties involved.  Although the burden for certifying a FLSA lawsuit for collective action notification is light, there are limits, and the district court cannot function as a rubber stamp for any and all claims that come its way under this statute.  Consistent with this principle, courts have the responsibility to avoid stirring up litigation though unwarranted solicitation. [Internal quotations and citations removed]

The parties here have engaged in substantial discovery. They have exchanged interrogatory responses and Defendant has produced approximately 5,600 pages of documents, including thousands of pages produced after meet and confer efforts between the parties.  Plaintiffs have taken Defendant's Rule 30(b)(6) deposition, and Defendant has deposed both Plaintiffs and three out of the four opt-ins. Although the discovery conducted to date supports application of the intermediate standard, even under the "modest" factual showing standard, Plaintiffs have failed to meet their burden.  *See Symczyk*, 656 F.3d at 193 ("Under the 'modest factual showing'

standard, a plaintiff must produce some evidence, 'beyond pure speculation,' of a factual nexus between the manner in which the employer's alleged policy affected [them] and the manner in which it affected other employees").

## IV.   ARGUMENT

### A.   Plaintiffs Cannot Establish They Are Similarly Situated to the Class They Seek to Represent

A collective action may be certified "only if the Court determines that the opt-in plaintiffs are 'similarly situated' to the named plaintiffs." *Sloane,* 2017 WL 1105236, at \*10.  Since the ultimate issue in this case is whether CTLs are properly classified as exempt, determining whether the putative class members are "similarly situated" requires analyzing the job duties performed by each putative class member. *See, e.g., Bramble*, 2011 WL 1389510, at \*5, 7; *Banks*, 2014 WL 1724856, at \*3.

Employees who have the same job title and formal job description do not necessarily perform the same work.  *See Sloane*, 2017 WL 1105236, at \*15-16 (denying conditional certification because the level of discretion each plaintiff exercised varied by worksite and supervisor); *Bramble,* 2011 WL 1389510, at \*8 (though plaintiffs and putative opt-ins have same job titles and descriptions, determining whether they are misclassified as exempt "would require an individualized inquiry as to whether the tasks performed by each putative collective action member are or were similar to the tasks that plaintiffs claim they performed and which render them more appropriately classified as non-exempt employees").

18

Courts regularly deny conditional certification where determination of exempt status requires an inquiry into the duties each individual employee performs.  *See, e.g., Sloane* 2017 WL 1105236, at *14 ("District courts in the Third Circuit have hesitated to grant nationwide certification in exemption cases where plaintiffs have failed to adduce sufficient evidence of similarity");  *Moore*, 2013 WL 2338251, at *5-6 (denying motion for conditional certification of class of assistant branch managers, rejecting the plaintiff's argument that "any employee classified as exempt by a company that does business nationwide is entitled to approval of a collective action . . . simply based on the employee's testimony that [s]he was required to perform non-exempt tasks").

Plaintiffs' application for conditional certification relies on their assertion that CTLs were misclassified as exempt companywide.  However, the evidence in the fifty-six Ollie's Declarations shows that the CTL's work clearly falls within the administrative and/or executive exemptions as they acknowledge they customarily supervise the work of two or more employees; that their primary duty is to manage the store; that they have authority or input into decisions to hire or fire; that they exercise discretion and independent judgment with regard to various matters involving the management of the store and/or store personnel. *See* Ex. D. On this record, there can be no doubt that a "case-by-case analysis is required" to properly determine whether an employee exercises discretion and independent judgment.

19

*Swartz v. Windstream Commc'ns, Inc.*, 2010 WL 2723213, at *4-5 (W.D. Pa. July 8, 2010).

To avoid the obvious need for an individualized, fact-specific inquiry, Plaintiffs argue, baselessly, that the "similarly situated" determination can be made in reliance on a common job description, common policies, and common training. Plaintiffs are wrong.   First, a shared job description is essentially meaningless: "if a uniform job description by itself was sufficient, every business in corporate America would be subject to automatic certification of a nationwide collective action on the basis of the personal experiences of a single misclassified employee."  *Freeman v. Sam's East Inc.*, No. 17-1786, 2018 WL 5839857, at *3-4 (D.N.J. Nov. 8, 2018) (holding there was "simply insufficient evidence to support a sweeping contention that because Plaintiff performed non-managerial tasks not listed in the job description, then other [Assistant Managers] must have as well"); *Diaz v. Elecs. Boutique of Am., Inc.*, No. 04-0840, 2005 WL 2654270, at *4 (W.D.N.Y. Oct. 17, 2005) ("[a]lthough [Store Managers] share the same job description, their responsibilities, in fact, may differ and thus a highly fact-specific and detailed analysis of each [Store Manager's] duties is required, making class treatment inappropriate").  Here, although the CTL job description is the same, "[w]hat [CTLs] do and how they manage their store is going to be very different."[40]

---

[40] Ex. E 43:10-44:4; 145:9-146:1.

Plaintiffs' failure to satisfy the similarly situated requirement is further demonstrated by the fact that Plaintiffs' claims arise from their own allegations of individual *deviations* from the CTL job description.  The Ollie's job description requires CTLs to perform managerial duties, not non-exempt ones.  Plaintiffs and the Opt-Ins here simply were <u>not</u> doing their job.[41]  Although Plaintiffs point to the CTL job description as proof that CTLs are "similarly situated," their own testimony shows their claims rest upon alleged performance of duties that are not contained within the CTL job description, and, by the same token, their non-performance of the CTL duties detailed in the job description renders collective treatment of their claims impracticable.  *See Holt v. Rite Aid Corp.*, 333 F.Supp.2d 1265, 1270-75 (M.D. Ala. 2004) (denying conditional certification of nationwide class of store managers and assistant managers and finding that conflict between plaintiffs' evidence and declarations submitted by defendant indicated a need for individualized inquiries).  Plaintiffs' failure to perform the duties set forth in the CTL job description does not eliminate Plaintiffs' exempt status.[42]  *See Lovo v. Am.*

---

[41] Amuso testified that the only primary responsibilities that she performed that were listed on the job description were having a positive attitude, interacting with customers and opening/closing the store.  Ex. S 179:21-181:7.  Kane testified he believed the job description encompassed what Ollie's headquarters expected CTLs to do, but that he did not perform those functions.  Ex. F 142:7-19.  Opt-in Blake testified he understood the duties outlined in the CTL job description, but did not perform them.  Ex. N 94:13-95:7; 96:2-11; 104:1-9; 135:4-19; 152:3-153:9-15.

[42] Brake stated his belief that he did not do a good job as a manager at Ollie's.  *See* Ex. N 133:14-19.

*Sugar Refining, Inc.*, No. 17-418, 2018 WL 3956688, at *9 (D. Md. Aug. 17, 2018) (employee with a job exempt in nature could not build a claim for overtime by failing to perform his job correctly) *Appeal Dismissed by*, 2018 WL 7500305 (4th Cir. Sep. 21, 2018); *White v. Winn-Dixie Montgomery, LLC*, No. 14-1702, 2017 WL 529298, at *13 (N.D. Ala. Feb. 9, 2017) ( "Plaintiff's failure to properly perform his job duties simply does not remove him from the executive exemption"), *Aff'd*, 741 Fed.Appx. 649 (11th Cir. July 09, 2018); *DiBlasi v. Liberty Mutual Group Inc.*, No. 12-10967, 2014 WL 1331056, at *8-9 (D. Mass. April 3, 2014) (employee's unwillingness or inability to perform her job did not convert her position from exempt to nonexempt).

Moreover, determining whether other CTLs similarly deviated from their job description requires an individualized, fact-specific inquiry of the actual duties each CTL performed, the frequency with which each performed non-exempt duties, and the level of supervision and independent judgment each exercised.  For example. the CTL job description expressly states CTLs are responsible to "[m]aintain the proper hiring, recruiting, interview, selection and onboarding of candidates" (Ex. R) Plaintiffs' allegation that they didn't have input into hiring decisions[43] must be evaluated against (1) Plaintiff's resumes (prepared post-Ollie's employment) that

---

[43] Rich Dec, ECF 48-11 ¶ 4; White Dec, ECF 48-10 ¶ 4; Brake Dec, ECF 48-9 ¶ 4; Benson Dec, ECF 48-8 ¶ 4.

FP 36468464.1

admit they were involved in recruitment, interviewing, and hiring[44]; (2) documents Plaintiffs produced and their deposition testimony that demonstrate Plaintiffs made recommendations regarding hiring, interviewed and evaluated candidates, and completed new hire checklists[45]; and (3) the Declarations of numerous other CTLs stating they were responsible for and/or had input into hiring decisions.[46]  In ruling on a motion for conditional certification, the Court does not review a plaintiff's evidence in a vacuum, but rather it "in light of the evidence submitted by Defendants."  *See Hall*, 2012 WL 3580086, at *6.

The "mere classification of a group of employees – even a large or nationwide group – as exempt under the FLSA is not by itself sufficient to constitute the necessary evidence of a common policy, plan, or practice that renders all putative class members as 'similarly situated.'"  *Bramble,* 2011 WL 1389510, at *4; *accord Freeman*, 2018 WL 5839857, at *3.

---

[44] Ex. V (Benson - "Responsible for all recruitment and human resources"); Ex. X (Brake - "conducting interviews and making hires"); Ex. T (Amuso - "Interviewing for new employees, hiring . . .").

[45] *See, e.g.,* Ex. AA; Ex. L 72:16-73:7; 262:16-263:7; 278:3-279:10; 281:3-282:3; 305:5-7 (indicating Benson's involvement in hiring & onboarding over 50 employees); Ex. F 65:10-67:17; 71:4-8; 71:21-72:11; 72:18-73:9; 92:14-93:19 (indicating that Kane interviewed applicant during a job fair and made recommendations regarding hiring); Ex.CC 85:24-89:10; 129:16-143:17 (indicating that Rich interviewed and evaluated applicants during a job fair).

[46] *See, e.g.* Ex. D at Ollie's 3080-84 ¶ 4; Ollie's 3085-89 ¶ 4; Ollie's 3099-3101 ¶ 6.

Plaintiffs' allegations that the CTLs are similarly situated because they operate under the same policies and receive the same training are likewise insufficient.  *See Banks*, 2014 WL 1724856, at *3 (denying conditional certification and observing any policy "would have affected each member of the putative class only through the discrete actions of individual store managers, and would thus have affected each employee differently"); *Guillen v. Marshalls of MA, Inc.*, 841 F.Supp.2d 797, 800 (S.D.N.Y. 2012) (denying conditional certification in absence of evidence defendant instituted a nationwide corporate policy requiring Assistant Store Managers to spend the majority of their time on non-exempt duties, noting that there were no non-exempt duties in the job description).  This is especially true here because Plaintiffs testified they did <u>not</u> regularly consult Ollie's policies and procedures.  For example, Kane testified his primary direction came from the STL, not corporate documents, and that he did not review policies or procedures when operating the store.[47]  Brake admitted spending little time reviewing Ollie's policies, and not reviewing them at all when he was at work.[48]  Benson testified she "very rarely" reviewed Ollie's policies and might never have done so during any given week.[49]

---

[47] Ex. F 159:21-160:22 (Kane: "nobody said to the store manager, well, the CTL has to do this.  The store manager determined it.  This is what you're going to do today"); 169:10-21.

[48] Ex. N 112:13-113:7.

[49] Ex. L 71:5-21.

Although Ollie's policies provide guidance, "[e]ach store is different in what they do and how they use [the policies]."[50]  Ollie's provides STLs and CTLs with "guidelines and policies and procedures to follow, but there's a lot of decision-making [they] have to make."[51]  Likewise, there are numerous differences among the many store locations and the decisions CTLs make in these various stores on a daily basis.  The undisputed testimony highlights differences among the stores managed by CTLs:

•  "Interpretations of [policies and procedures], whether a store utilizes this policy or not [is] dependent on their sales volume, freight flow, those things" (Ex. D 65:18-66:9);

•  Ollie's banking and deposits policy differs between stores that have armored cars and stores that do not (*Id.* 65:2-10);

•  CTLs exercise great discretion with regard to merchandising.[52]

---

[50] Ex. E 58:22-59:11.

[51] Ex. E 150:23-151:17; 154:1-7 ("We empower our CTLs and STLs to make the right decisions for the business . . . we have certain customer service standards that we guide with and we have principles; but they have the power to take care of customer[s], to do the right thing.").

[52] *See, e.g.,* Ex. D at Ollie's 2959 ("As [CTL], I am in charge of the sales floor. Although most chain retailers use a planogram to show where merchandize should be stocked, Ollie's does not because we never know what we are getting.  Flexibility is a must to be a [CTL] at Ollie's. . . . Because Ollie's does not utilize a planogram, I have a great deal of discretion in product placement and making decisions regarding how to arrange merchandise to facilitate sales and fit the Store's layout").

•     There are numerous differences in the implementation of Ollie's Door to Floor in 24 guide (Ex. E 71:1-20).

Moreover, Ollie's use of checklists, policies, and guides as tools for managers does not eliminate CTL discretion and decision-making.   For example,

•     The daily store safety scan is a checklist that involves "huge decision-making" by the CTL, who must subjectively "make certain decisions, contacts, changes" (Ex. E 105:12-22);

•     Although the Opening Checklist is prepopulated, "what the decision-makers need to do with that checklist is very different in each of [Ollie's] stores" (*Id.* at 108:3-10);

•     The Closing Checklist includes blank lines where each store "could put their own tasks based on the needs of their business" (*Id.* at 108:24-109:4);

•     Using the Monthly Safety Inspection, stores must "independently make decisions on corrective actions and put additional notes and make decisions to change and correct the deficiencies" (*Id.* at 110:16-111:6).

Finally, Ollie's trains internal and external CTL hires differently.   For example, Plaintiff Kane received several weeks of training when hired, whereas Opt-in Plaintiff Rich's training lasted only a week because he previously had been an

ATL.[53]   The difference in training is not surprising given that an incumbent ATL had been exposed to the manner in which Ollie's stores operated, whereas a new hire into the CLT position required additional and specific training because Ollie's stores are run so differently from other multi-state retailers.[54]   Likewise, performance evaluations are tailored to each CTL's performance of his or her specific managerial responsibilities.   *See e.g.,* Ex. O. In sum, the numerous differences in the CTL position preclude conditional certification.

### 1. Plaintiffs Fail to Define a Collective of Similarly Situated Individuals Because Their Alleged Job Duties Differ from Other CTLs' Whose Primary Duties Were Managerial

Plaintiffs' deposition testimony underscores the differences between themselves and the other CTLs who have submitted Declarations.[55]   While Benson and Kane admit they interviewed and hired new employees,[56] Brake denies any involvement in interviewing and/or hiring[57] and Amuso states she only performed tasks at the direction of the STL.[58]   The 56 Declarations Ollie's submits show

---

[53] Ex. F 32:7-13; Ex. BB 150:13-15; 152:12-21; Osborne 52:14-53:4; 84:21-85:4; 121:19-25; 151:18-152:17 (all training that CTLs receive is not referenced in the training workbook).

[54] Ex. E 52:14-53:4; 55:3-7.

[55] *See* Ex. Z (contrasting Plaintiffs' job duties, as outlined in Plaintiffs' testimony); Ex. D-2 (contrasting the job duties of other Ollie's CTLs).

[56] Ex. L 262:16-263:7; 278:3-279:10; 281:3-282:3; 305:5-7; 443:14-19; Ex. AA; Ex. F 59:5-60:5; 65:10-67:17; 71:4-8; 71:21-72:11; 72:18-73:9; 92:14-93:19.

[57] Ex. N 56:13-58-3.

[58] Ex. S 20:13-21:3; 106:8-107:19; 109:21-25; 159:15-161:11.

27

conclusively – without the Court making any factual determinations – that Plaintiffs are not similarly situated to the proposed CTL class.  For example, while Plaintiffs say they performed no managerial duties and spent around 90-99% of their time on non-exempt tasks,[59] the Ollie's Declarations demonstrate CTLs regularly perform management duties.[60]  Unlike Plaintiffs (who describe themselves as "robot[s]")[61] and  the "cookie cutter" declarations submitted by them, the fifty-six Declarations submitted by Ollie's current and former CTLs show they regularly engage in the following managerial duties:

- CTLs recruit, interview and hire employees.
- CTLs supervise at least two employees, and usually many more, per shift.[62]
- CTLs assign duties to employees and are responsible for employee scheduling/ensuring the store is staffed properly.
- CTLs manage customer and employee complaints.
- CTLs review and discipline employees reviews and participate in termination decisions.
- CTLs exercise judgment and make decisions relating to merchandising, floor plan, and store layout/design.
- CTLs analyze store profitability and Profit & Loss Statements.  *See* Ex. D.

---

[59] Ex. S 206:5-208:6; ECF 48-11 ¶2; ECF 48-10 ¶2; ECF 48-9 ¶2; ECF 48-8 ¶2.

[60] *See* Ex. D at Ollies 2974 ¶8 ("I would estimate that about 60% of the time I am the top-ranking manager in the store.  When I am the manager in the store, I am responsible for all aspects of store management"); Ollies 3123 ¶4 (estimating that he spent at least 80% of his time as a CTL managing staff and planning tasks).

[61] Ex. S 113:10-13; Ex. F 106:2-9.

[62] *See, e.g.,* Ex. D at Ollie's 2957 ¶7 ("All department supervisors report to me."); Ollie's 2979 ¶6 ("As CTL I supervised 23 or so employees on average – everyone in the store with the exception of the STL."); Ollie's 3003 ¶6 ("We had 31 associates in the Monroeville location when I was a CTL and they reported directly to me.").

Because CTLs regularly engage in exempt management work (*see* 29 C.F.R. §§ 541.100, 541.102), there can be no finding that Plaintiffs are "similarly situated" to members of the putative class and united with them by a common *unlawful* classification.  Instead, Plaintiffs' testimony conclusively establishes that Plaintiffs are *not* similarly situated to other Ollie's CTLs and were not doing their job.  It's no wonder that five out of the six Plaintiffs were terminated by Ollies.  Certainly, poor or non-performing employees are <u>not</u> representative of the vast majority of Ollie's CTLs who fulfill their duties and are on the ladder for advancement in management through the OLI.  The parties' conflicting submissions and testimony show that the propriety of each CTL's exempt status must be individually determined.  This, too, precludes conditional certification.  *See, e.g., Harriel v. Wal-Mart Stores Inc.*, No. 11-2510, 2012 WL 2878078, at n. 3 (D.N.J. July 13, 2012) (denying certification where "plaintiff's allegation regarding the amount of time spent performing non-exempt, non-managerial tasks is directly contradicted by declarations from other managers," necessitating an "'individualized inquiry' disfavored by the collective action mechanism").

Moreover, Plaintiffs admit they were expected to be the second in command in the stores.[63]  And while Plaintiffs' claim that they were required to contact the

---

[63] Kane and Benson admitted the CTL is the number two person in the store.  Ex. F 12:21-25; Ex. L 361:12-19.  Brake admitted that the STL advised him that he would be "co-store manager."  Ex. N 40:8-15.  Kane said that when the STL was not

STL or DTL regarding managerial decisions when the STL was away,[64] the Declarations Ollie's submits show that CTLs run the store when the STL is absent, perform the same job duties as the STL, and operate as a "co-pilot" or "second in command" within the store.[65]   Employees designated second in command are generally deemed exempt from overtime. *E.g., Holt v. City of Battle Creek*, 925 F.3d 905, 907, 910-913 (6th Cir. 2019); *McDowell v. Cherry Hill Twp.*, No. 04-1350, 2005 WL 3132192, at *1, 10-13 (D.N.J. Nov. 21, 2005) ("second in command" employee satisfied both administrative and executive exemptions); *Frey v. Spokane Cty. Fire Dist.No. 8*, No. 05-278, 2006 WL 2597956, at *7-10 (E.D. Wash. Sept. 11, 2006).

In sum, Plaintiffs' lackluster job performance *refutes* their contention that they are similarly situated to a putative class of CTLs.   According to Plaintiffs, they

---

present, he "was the person in charge." Ex. F 60-61:3.  Benson stated on her Ollie's review that she felt she "made sound decisions where STLs were absent," that she "had to run [the] store twice," and that "most of the responsibility [was] put on [her]."  Ex. O; Ex. L 89:24-91:9; 92:6-24.

[64] *See* ECF 48-8 ¶6; ECF 48-9 ¶6; ECF 48-11 48-10 ¶6; ECF 48-11 ¶6.

[65] *See, e.g.,* Ex. D at Ollie's 2961 ¶6 ("My position does not vary much at all from that of the STL"); Ollie's 2968 ¶16 ("There is not much different in my job as a CTL and that of the STL"); Ollie's 2970 ¶3 ("When the Store Team Leader was not present, I was in charge of the entire store"); Ollie's 2973 ¶4 ("I view my job at Ollie's as being the 'Co-pilot' in the store along with the Store Team Leader"); Ollie's 2987 ¶22 ("As a CTL, I was the most senior person in charge of the store for two to three days per week.  I was given very little direction from my STL."); Ollie's 2988 ¶4 ("In my opinion, the Co-Team Leader is basically like the Vice President of the store."); Ollie's 3006 ¶6 ("As a CTL, I was 'in charge' of the store, meaning I had overall responsibility for the store."); Ollie's 3056 ¶3 ("I am second in command at this store").

30

mindlessly followed direction and did the work of hourly employees. Assuming arguendo the truth of this assertion, Plaintiffs activities are entirely inconsistent with the CTL job description and the Declarations of other CTLs Plaintiffs seek to represent. Plaintiffs have presented no evidence their job performance is in any way representative of the job duties performed by any other CTLs in the four states where Plaintiffs worked, much less nationwide.

### 2. Plaintiffs Point to No Common Evidence that All CTLs Have Materially the Same, Primarily Non-Managerial Duties

Plaintiffs have not produced evidence sufficient to warrant certification of a nationwide class of CTLs. By Plaintiffs own admission, they worked as CTLs at **2%** of Ollie's 345 stores where Ollie's has operations. (ECF 48-1, pp.3-4).[66] "To certify a class covering all of defendant's locations . . . plaintiffs must provide sufficient evidence of a company-wide practice through declarations of present and former employees at other locations to justify sending notice to similarly situated employees at all locations at issue in the litigation." *Cobus v. Duhadway, Kendall & Assocs.*, No. 13-14940, 2014 WL 4181991, at *5 (E.D. Mich. Aug. 21, 2014) (internal quotation marks omitted).

Even if Plaintiffs could identify an FLSA-violating practice (which they

---

[66] During the pendency of this lawsuit, the number of CTLs in the putative class has increased to 1,042 and the number of stores has increased to 345 stores. *See* Caminiti Decl. ¶2.

cannot), Plaintiffs could not support conditional certification beyond the stores where they worked, because there is no evidence they have knowledge about other stores:

- Amuso testified that, to her "knowledge," other CTLs performed the same manual work she performed. She based that "knowledge" on what she says she observed at the Ollie's stores where she worked and on "conference calls" with other, unnamed CTLs.  But Amuso also testified that when she worked in other stores she did not discuss job duties with other CTLs and that CTL job duties were not discussed on the conference calls. Ex. S 208:7-19; 220:23-221:9.

- Although Kane testified his job was the same as other CTLs', he admitted the only other CTL he had direct contact with was in Ollie's Deptford, NJ store and that he had "very little" interaction with that CTL.  Ex. F 53:17-54:2; 90:22-91:11.

- Rich's Declaration refers to "other CTLs that [he] knew".  He does not, however, identify these CTLs or their stores, other than to state he saw other CTLs in the Fayetteville, NC store perform certain duties. ECF 48-11 ¶ 11. Rich admitted that he does not know whether other CTLs hired associates, recruited employees, directed the activities of other employees, or made recommendations about promotion or termination.  Ex. BB 116:4-117:18.

32

- White's Declaration refers to "other CTLs that [she] knew" but does not identify them. ECF 48-10 ¶11. White did not appear for deposition.

- In Brake's Declaration, he states his belief that CTLs all perform manual duties.   ECF 48-9 ¶11.   Brake testified, however, that he had only one interaction with a CTL from another Ollie's store, and that interaction lasted less than five minutes.  Ex. N 130:6-22.[67]

- In Benson's Declaration, she states that other CTLs performed the same types of manual duties she performed.   ECF 48-8 ¶11.   Benson's knowledge of Ollie's operations, however, relates to only three Ollie's stores, the one she worked in, one she trained in for two weeks and one other store she worked in for one day, but whose CTL she admittedly did not know.  Ex. L 114:1-12; 424:19-425:9; 437:1-437:21. Moreover, Benson admitted that she did not know whether other CTLs hired or disciplined employees.  *Id.*. 371:7-12.

"[T]o warrant a finding that similarly situated employees exist, a plaintiff's declaration must at least allege facts sufficient to support an inference that she has *actual knowledge* about other employees job duties . . . hours worked," etc.  *O'Neal v. Emery Fed. Credit Union*, No. 13-22, 2013 WL 4013167, at *8 (S.D. Ohio Aug.

---

[67] Brake also admitted that he did not know how many deliveries other stores received, did not know how many people unloaded trucks at other stores, did not know how much merchandise the Greenville store received in comparison to other stores and did not know how many employees worked in other Ollie's stores. *Id.* 116:23-117:23.

FP 36468464.1

6, 2013) (emphasis in original).   Here, Plaintiffs' evidence falls woefully short.
Moreover, a plaintiff's "[u]nsupported assertions of widespread violations are not
sufficient" to warrant conditional certification.   *Reed* 2015 WL 761894, at *4; 7
(denying conditional certification where plaintiff did not have knowledge of other
employees and relied on assumptions); *see also, e.g., Harriel* 2012 WL 2878078, at
*5 ("The fact that Plaintiff alone claims he spent most of his time performing non-
managerial tasks, combined with the evidence showing that the [Assistant Manager]
position is subject to nationwide standards under Defendant's corporate policies,
does not require the Court to infer that a significant number of other [Assistant
Managers] would have also deviated from the written job description to spend most
of their time performing non-managerial tasks."); *Bramble*, 2011 WL 1389510, at
*2 (denying certification where plaintiff's declaration stated only that he
"believe[d]" his experience was typical of others in the same position, while
defendant's evidence "largely contradict[ed] plaintiffs' assessments of their own job
responsibilities"); *Freeman,* 2018 WL 5839857, at *3 ("Plaintiff's claims rests on
his own individualized work experience, in which he never performed managerial
responsibilities and frequently worked more than forty hours per week. . . . But
Plaintiff failed to present any evidence that other [Assistant Managers] had similar
experiences.   He essentially asks the Court to assume that because he performed non-
managerial tasks and worked in excess of forty hours in a workweek, then other

34

[Assistant Managers] did too. 'Courts in this Circuit . . . have routinely found that such speculation is not proper.'").

Finally, Plaintiffs' attorney-prepared, cookie-cutter declarations should be disregarded because they merely repeat conclusory statements virtually verbatim. These declarations have no probative value, and for that reason alone Plaintiffs fail to make the required for conditional certification.  Courts routinely deny certification motions relying on such material.[68]

---

[68] *See, e.g. Wooton v. Steelmaster Indus., Inc.*, No. 19-cv-419-Orl-37GJK, 2019 WL 2423786 (M.D. Fla. June 10, 2019) (plaintiffs' form declarations with conclusory allegations cannot overcome defendant's detailed affidavits to the contrary); *Eggnatz v. Coventbridge Inc.*, No. 18-61250, 2019 WL 1171455, at *3 (S.D. Fla. March 13, 2019) ("allowing conditional certification based on 'a handful of boilerplate declarations' would 'present a ready opportunity for abuse'"); *Delnoce v. Globaltranz Enterprises, Inc.*, No. 17-1278, 2017 WL 4769529, at *5 (D. Ariz. Sept. 25, 2017) (discrediting plaintiffs' nearly identical declarations and holding that plaintiffs could not meet their burden for conditional certification by merely describing their own experience and their belief that co-workers experienced the same); *Brown v. Barnes & Noble, Inc.*, 252 F.Supp.3d 255, 266 (S.D.N.Y. 2017) (finding plaintiffs' "cookie-cutter declarations" insufficient to support their contention that they were similarly situated to others nationwide); *Sloane*, 2017 WL 1105236, at *16 (M.D. Pa. Mar. 24, 2017) (denying certification where "the set of bare-bones affidavits that Plaintiffs have offered" containing boilerplate conclusions about nonpayment of overtime "are precisely what FLSA case law has pejoratively termed 'too thin a reed on which to rest a nationwide certification'" ); *Postiglione v. Crossmark, Inc.*, No. 11-960, 2012 WL 5829793, at *5 (E.D. Pa. Nov. 15, 2012) (finding plaintiffs' affidavits unreliable as derived from forms and not individually drafted for the employees signing them).

**B.      Plaintiffs Fail to Show There Is a Manageable Class.**

Collective actions must be an "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged [unlawful] activity." *Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165, 170 (1989).  Therefore, before granting a motion for conditional certification, a court must consider "whether as a matter of sound class management . . . a manageable class exists."  *Hall*, 2012 WL 3580086, at *9.  There must be "evidence that the Plaintiffs would present a single claim that if resolved for one, would be resolved for all." *Rutledge v. Claypool Elec., Inc.*, No. 12-159, 2013 WL 435058, at *5 (S.D. Ohio Feb. 5, 2013).  On the other hand, if it appears there will be a fact-intensive, individualized inquiry, certification is precluded because individual issues predominate over collective ones. *See, e.g., Bramble*, 2011 WL 1389510, at *6.

The inquiry here would inevitably be fact-intensive and individualized.  It would have to be determined the actual work performed by each class member on a weekly basis to evaluate whether they performed managerial exempt duties; and if not, whether each member of the class worked more than 40 hours in any workweek such that they would be entitled to overtime.  To put it another way, each and every Plaintiff would have to have his or her own trial on both liability and damages, just as if the case were not certified.  For this reason, too, the Court should deny Plaintiffs' Motion for Conditional Certification.

FP 36468464.1

### C.     The Proposed Class Notice Should Be Rejected

Even if conditional certification were appropriate, Plaintiffs' proposed class notice most certainly is not.  It should be scrapped, with the Court ordering the parties to meet and confer on the content of the notice and notice procedures. Thereafter, the parties could submit any agreed upon notice procedures and submit a status report on any unresolved issues.  *See, e.g., Vargas v. Gen. Nutrition Ctrs., Inc.*, No. 10-867, 2012 WL 5336166, at *13 (W.D. Pa. Oct. 26, 2012) (directing parties to "meet and confer to devise a fair and accurate notice and procedure that is reasonable and agreeable to the parties and the Court").

In addition to ordering the parties to meet and confer, the parties would benefit from the Court limiting Plaintiffs' proposed notice in several ways.  First, Plaintiffs request that Ollie's be ordered to provide Plaintiffs with an extensive list of personal information regarding each individual CTL is overbroad, unnecessary, and intrusive. CTLs have a privacy interest in their social security numbers, private telephone numbers, and personal email addresses, and many likely would object to the disclosure of this information.  The Court should not order Ollie's to provide this information.  *See, e.g., Kuznyetsov v. W. Penn Allegheny Health Sys., Inc.*, No. 09-379, 2009 WL 1515175, at *6 (W.D. Pa. June 1, 2009) (finding personal information plaintiffs requested exceeded what was necessary and appropriate, and limiting production from defendant to names and mailing addresses).  Even the case law

37

Plaintiffs rely on denies a request for similar information and requires only the production of known names and mailing addresses. *See* ECF 48-35. As a practical matter, Plaintiffs demands cannot be satisfied to the extent that they seek certain email addresses, which Ollie's simply does not collect. Finally, Plaintiffs' request should be denied because counsel has already issued notice to Ollie's CTLs, *without* leave of Court. *See* Exs. A-C.

Moreover, Plaintiffs' request for email notice should be rejected. Numerous district courts within the Third Circuit have held that distribution by U.S. mail is the sole appropriate form of notice. *E.g., Vargas*, 2012 WL 5336166, at *12-13; *Kuznyetsov*, 2009 WL 1515175, at *6; *Sawyer v. Health Care Solutions at Home, Inc.*, No. 16-5674, 2018 WL 1959632, at *5 (E.D. Pa. April 25, 2018).

Nor should Ollie's be ordered to post notice at its stores or include a notice in CTL paychecks. *Vargas*, 2012 WL 5336166, at *12-13. Plaintiffs' request to permit prospective class members to opt-in via electronic consent to a website should also be denied. These requests are "unnecessary and redundant" in light of the sufficiency of first class mail to class members' homes. *See e.g.*, *Aboud v. City of Wildwood*, No. 12-7195, 2013 WL 2156248, at *8 (D.N.J. May 17, 2013); *Hughes v. Township of Franklin*, No. 13-3761, 2014 WL 1428609 at *4 (D.N.J. April 14, 2014).

FP 36468464.1

Plaintiffs' request for a "reminder" notice should be denied as unnecessary and duplicative. Courts are to avoid "communicating to absent class members any encouragement to join the suit or any approval of the suit on its merits," *Hoffmann-LaRoche*, 493 U.S. at 168-69, and should be hesitant to authorize duplicative notice that could "stir[] up litigation through unwarranted solicitation." *Sloane*, 2017 WL 1105236, at *6-10.

Plaintiffs' proposed Notice itself is also problematic for a number of reasons:

Plaintiffs should not be permitted to insert the Court's caption at the top of the Notice, since that would conflict with the Supreme Court's instruction to district courts to be "scrupulous to respect judicial neutrality." *Hoffman-LaRoche,* 493 U.S. at 174. Second, the proposed notice period encompasses the three years prior to the filing of the Complaint on March 12, 2018 (i.e., March 12, 2015) (ECF 48-33), which is impermissible. A collective action under the FLSA commences for an opt-in plaintiff when the opt-in files a written consent and not when the Complaint is filed. *See Vargas*, 2012 WL 5336166, at *5. Therefore, notice should be three years before the Court's Order of Conditional Certification.

Plaintiffs request for a 90 to 120-day, opt-in period is too long and would needlessly delay the litigation. Ollie's proposes a 30-day notice period. *See Aboud*, 2013 WL 2156248, at *8 ("courts generally find 30-60 days is sufficient").

39

There should be prominent language setting forth Ollie's position that CTLs were properly classified as exempt, that there was no violation of the FLSA, and that putative class members may be required to provide testimony.

The anti-retaliation statement, which insinuates that Ollie's would retaliate against putative class members, should be removed.

## V.   CONCLUSION

Plaintiffs failed to meet their burden to establish that they are similarly situated to other CTLs.  Therefore, Ollie's respectfully requests that this Court deny Plaintiffs' Motion for Conditional Certification.

Respectfully submitted,

**FISHER & PHILLIPS, LLP**

Dated: November 4, 2019               By:   _____
Heather Z. Steele, Esquire
PA91391
150 N. Radnor Chester Road, Suite C300
Radnor, PA  19087
(610) 230-2150 (phone)
(610) 230-2151 (facsimile)
hsteele@fisherphillips.com

Kathleen McLeod Caminiti, Esquire
NJ040361987
Admitted Pro Hac Vice
430 Mountain Avenue, Suite 303
Murray Hill, NJ  07974
(908) 516-1050 (phone)
(908) 516-1051 (facsimile)
kcaminiti@fisherphillips.com

40

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.8(b)(2)

Pursuant to Local Rule 7.8(b)(2) and Court Order dated October 22, 2019, the undersigned counsel certifies that Defendant's Opposition to Plaintiffs' Motion for Conditional Certification is 9,632 words as verified by the word count feature of Microsoft Word as used by the undersigned counsel.  The word count reflected herein only includes the body of Defendant's Opposition to Plaintiffs' Motion for Conditional Certification, and excludes Case Caption, Table of Contents, Table of Authorities, Signature Block, Certificate of Compliance and Certificate of Service.


Dated: November 4, 2019                      */s/ Heather Z. Steele*
                                             Heather Z. Steele

FP 36468464.1

## <u>CERTIFICATE OF SERVICE</u>

I, Heather Z. Steele, Esquire, hereby certify that on this 4th day of November, 2019, a true and correct copy of the foregoing was served and filed using the Middle District of Pennsylvania's ECF system, through which this document is available for viewing and downloading, causing a notice of electronic filing to be served upon the following counsel of record:

> Rebecca S. Predovan, Esquire
> Marc S. Hepworth, Esquire
> Charles Gershbaum, Esquire
> David A. Roth, Esquire
> HEPWORTH, GERSHBAUM & ROTH, PLLC
> 192 Lexington Avenue, Suite 802
> New York, NY   10016
>
> rpredovan@hgrlawyers.com
> mhepworth@hgrlawyers.com
> cgershbaum@hgrlawyers.com
> droth@hgrlawyers.com
>
>
> Peter Winebrake
> Mark J. Gottesfeld
> WINEBRAKE & SANTILLO, LLC
> 715 Twining Rd, Suite 211
> Dresher, PA 19025
>
> pwinebrake@winebrakelaw.com
> mgottesfeld@winebrakelaw.com
>
> Attorneys for Plaintiffs
>
>
> */s/ Heather Z. Steele*
> Heather Z. Steele

FP 36468464.1